**Rodriguez v. Rodriguez**
*[Cite as 2 AOA 651]*

Case No. 89-G-1498
Geauga County, (11th)
Decided March 13, 1990

R.C. 3105.18

Joseph T. Svete, Esq., 100 Parker Court Chardon, Ohio 44024, For Plaintiff-Appellee.

Marc I. Strauss Chattman, Esq., Garfield, Friedlander & Paul 6200 Rockside Road Cleveland, Ohio 44131, For Defendant-Appellant.

Michael A. Poklar, Esq., 29525 Chagrin Blvd., Cleveland, Ohio 44122, For Defendant-Appellant.

FORD, J.

Appellant, David Rodriguez, and appellee, Deborah Rodriguez, were granted a divorce on December 7, 1989. The parties stipulated to the value of many of the marital assets. However, the value of one asset, Rodriguez Sales and Service, the appellant's business, was contested. Appellee presented one expert who valued it as $280,586, and appellant's expert valued it at $51,257. The court concluded that the business was worth $125,000, and awarded it to appellant. In total, the court awarded marital assets of $188,650 to appellee and $181,166, which included the business, to appellant. The appellee was also awarded custody of the three children, child support in the amount of $1,146.87 per month, and sustenance alimony of $703.13 per month for six (6) years or approximately $50,000.

Appellant raises the following two assignments of error.

"1. The trial court erred in the property division portion of its Judgment Entry when it valued Appellant-Husband's business, Rodriguez Sales and Service, without deducting a reasonable salary for a manager.

"2. The trial court erred when it not only granted Appellee-Wife over one-half of the marital estate which included all of the liquid assets but further granted her approximately $50,000.00 in alimony over and above the property division award."

Appellant initially takes issue with the court's valuation of his business. He argues that the valuation is skewed because the court failed to include a manager's salary in the valuation. From the record, we are unable to determine whether the court did or did not make an adjustment to the value of the business because of this.

Independently, this court concludes such an adjustment, based upon the evidence presented, would be erroneous. Appellee's expert discounted such a reduction and stated that it would be inappropriate to determine value with such a deduction. He also noted that any individual purchasing the business would not hire a manager to run the company. Rather, the purchaser would continue to operate the business as a sole proprietorship.

Appellant also asserts that appellee's expert failed to consider or did not have before him all of the necessary business records upon which to make his conclusion.

While this may or may not be accurate, such is a question of credibility of the witness. Appellant was afforded an opportunity to cross-examine the expert on this subject and challenge his conclusions, and in actuality, he did. Furthermore, appellant presented his expert who attempted to discredit appellee's witness.

This conflicting testimony and the resolution of which value to accept is a question of credibility of the witness that is to be determined by the trier of fact.

"These theories were distinctly different, and both had strong support by expert testimony of witnesses. It is unfortunate, but true, that experts, like the rest of mankind, may take a given set of facts and draw absolutely divergent conclusions therefrom. It thus becomes necessary for some tribunal to make determination of the correctness of these opposite conclusions." Springfield Gas Co. v. Herman (1933), 46 Ohio App. 309, 311.

That determination in this cause was for the trial judge.

However, in obtaining a valuation, the judge or trier of fact must have before it sufficient evidence to justify or support the dollar figure it obtains. This court in Bollas v. Bollas (Dec. 1, 1989), Trumbull App. No. 88-T-4089, unreported, citing from Bushman v. Bushmah (Mar. 31, 1989), Geauga App. No. 1442, unreported, noted "that the availability of testimony, in the trial court record, which

purports to value property, is not a panacea for failure to specifically enumerate valuations in the entry. An appellate court cannot glean from the record the trial court's estimation of the credibility of the witnesses' valuation testimony unless the trial court provides the answer in the entry." *Bollas,* at 4. Similarly, if the trial court summarily arrives at a valuation of an asset or property, even though between the two extremes of the opposing parties' witnesses, without a proper evidential predicate, such would be error. Even though the trier of fact is granted much leeway in obtaining a value, it must do so based upon the evidence before it. To achieve a middle of the road estimation without some basis for such an adjustment from one extreme or the other would constitute error as not being supported by the evidence.

In this cause, appellant's expert valued the business at $51,257. Appellee's expert indicated it was worth $280,586. The remaining testimony is insufficient to support a finding of $125,000. Neither party presented evidence which would either increase the value by approximately $75,000 or decrease the value by $155,000. Furthermore, the court failed to explain how it obtained the value it did. Therefore, the court's conclusion is not supported by any evidence which would permit a valuation of $125,000.

The first assignment has merit for reasons other than those articulated by appellant. See App. R. 12.

In the second assignment, appellant alleges that the court erred by awarding appellee sustenance alimony. This is meritless.

"A trial court in any domestic relations action has broad discretion in fashioning an equitable division of marital property. *Berish* v. *Berish* (1982), 69 Ohio St. 2d 318 [23 O.O. 3d 296]; and when appropriate, in awarding alimony based on need. *Wolfe* v. *Wolfe* [(1976), 46 Ohio St. 2d 399.]" *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217 at 218.

Furthermore, it has long been recognized that sustenance alimony is not a component of the division of the marital assets. Rather, as noted in *Cherry* v. *Cherry* (1981), 66 Ohio St. 2d 348, and *Wolfe, supra:*

"Only after a division of property is made, is the court statutorily authorized to consider whether an additional amount is needed for sustenance, and for what period will such necessity persist.

"Any grant of 'alimony' for sustenance is necessarily co-extensive with the court's determination that it is needed and warranted.

Such authentication and supervision is accomplished through the continuing jurisdiction of the court." *Wolfe,* at 414.

The specific grounds for a grant of alimony are established in R.C. 3105.18(B). "When a trial court does not specify the reasons behind its award, it is presumed that the factors listed in R.C. 3105.18(B) were considered". *Russell* v. *Russell* (1984), 14 Ohio App. 3d 408, at paragraph two of the syllabus.

In *Blakemore, supra,* the court noted that the proper standard of review regarding alimony payments was abuse of discretion. Absent such a showing, no error can be found and the evidence in this cause does not support such a finding.

The judge, in his entry, noted appellee's monthly expenses and indicated her contribution. From this, he determined how much appellant should provide. This was sufficient to comply with the dictates of *Russell, supra,* and R.C. 3105.18(B) for purposes of determining the "additional amount needed for sustenance and for what period will such necessity persist." As such, no error can be found.

For the reasons stated in the opinion of this court, the judgment of the trial court is reversed and remanded for further proceedings.

*Judgment reversed*
*and cause remanded.*

CHRISTLEY, P.J., Concurs
with concurring opinion.

LYNCH, J., Ret.,
sitting by assignment,
Concurs with Concurring opinion.

LYNCH, J., Concurring:

This judge recognizes that the opinions of both Judge Ford and Judge Christley have good legal precedent, but the ultimate result of these decisions appear to this judge as being unjust and unfair to appellant for economic reasons of which this judge has some background because his major for his B.A. Degree was Economics.

According to the record, appellant's gross earnings are $57,464 per year from Rodriguez Sales and Service of which appellant is sole proprietor. Appellant estimates his Federal Income Taxes as $11,000, State Income Taxes as $2,000 and Social Security payments as $5,000; for a total of $18,000. When such sums are deducted from appellant's gross pay, his net take home pay is $39,460.

The trial court awarded custody of three children to appellee and ordered appellant to pay a total of $1,146.87 a month for support of such children, plus $703.13 a month to appellee as alimony for a total of $1,850 a month and $22,200 a year, which leaves appellant a net of $17,260 for his living expenses.

Under the law quoted by Judge Ford and Judge Christley, the court's decisions as to division of property and child support and alimony are independent of each other, and this judge agrees that this is generally sound law. However, different facts from general situations often require exceptions from general law, and this judge strongly feels that the facts of this case are different from general situations and that the application of general law is unfair and inequitable under the facts in this case.

This judge accepts the inclusion of the income of the sole proprietor in a sole proprietor corporation as proper in some cases but questions the application of such a formula in domestic relations cases when the facts are similar to the case.

Appellant's gross income from subject corporation is the same as the salary of anyone working for any corporation. This judge agrees with the trial judge in his decision as to using such income as a basis for his decision on child support and alimony; but this judge believes that the use of appellant's gross income from subject corporation as an asset of such corporation in the evaluation of such corporation is unfair and inequitable.

The true value of such corporation is what such corporation can be sold to a willing buyer. If appellant sold this corporation he would no longer be receiving the income that he is now receiving from such corporation and which is the basis of the trial court's child support and alimony orders.

The point that this judge is making is that the trial court's orders on child support and alimony are dependent on appellant's gross earnings from subject corporation to the extent of $22,200 a year.

This $22,200 is not an asset; it is a continuing liability, but this $22,200 has been capitalized as an asset of appellant in the evaluation of such corporation.

In the division of the assets of subject parties, appellant got his business in which his service is apparently the main asset and appellee got most of the marital assets, including the marital home which is worth $115,000. The appellant is also entitled to continue to live at a similar standard of living.

The decision of the trial court gave appellee the marital home in which she can live as well as an award of alimony and child support that will permit her to live a similar standard of living. There is no similar provision in the trial court's decision as to the division of the marital assets to help appellant to acquire a place to live that is similar to his standard of living.

CHRISTLEY, P.J., Concurring:

I concur in the majority holding in this case but offer the following observations on the analysis of the first assignment. I am concerned that our analysis may be seen as a signal indicating that any valuation of marital assets which lies between the extremes presented will be considered lacking in evidential support.

This case must be viewed as being limited to its facts; those facts being that absolutely *no* rationale was offered as to the source of the $125,000 figure. Further, the calculation of that figure by the trial court was not readily ascertainable from the record or judgment entry. Even if the value in question was precisely equidistant from either extreme (which it is not), some word of explanation still would have been required.

That is not to say that a precise formula would have to be put forth. Many aspects of the valuation of marital assets cannot always be reduced to a mathematical nicety. Nevertheless, some clue as to where the number came from is required. Was it a result of a credibility assessment of either the witness or the method of valuation employed; was it a distrust of the foundation facts; was it a recognition of the hyperbole or bias of the extremes offered; was it a discounting of certain factors used in the offered valuations?

I personally do not find it to be a problem that the number $125,000 does not specifically appear anywhere in the evidential table. The finder of fact can believe or disbelieve all, none or part of a witness' testimony, expert or otherwise. What is a problem is that there is no clue, however brief, as to how this figure was deduced by the trier of fact. See, *Hoopingarner v. Hoopingarner* (Jun. 6, 1985), Cuyahoga App. No. 49261, unreported, for similar rationale.

Thus, I believe that a reversal is necessary to allow the trial court to provide some insight as to this issue.